

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

| | |
|---|---|
| RACHAEL A. HONIG<br>*Acting United States Attorney*<br><br>MOLLY S. LORBER<br>*Assistant United States Attorney* | CAMDEN FEDERAL BUILDING & U.S. COURTHOUSE   856/757-5026<br>401 Market Street, 4th Floor                                              Fax: 856/968-4917<br>Post Office Box 2098                                              Direct Dial: 856/968-4926<br>Camden NJ  08102 |

November 11, 2021

Hon. Robert B. Kugler
United States District Judge
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

     Re:   United States v. Frank Nucera, Jr.
             Crim. No. 17-532 (RBK)

Dear Judge Kugler:

     Please accept this letter in lieu of a more formal brief seeking rulings on two evidentiary issues that the Government anticipates will arise during retrial in the above criminal matter.  First, the Government wishes to introduce evidence that the victim, referred to in the Indictment as Civilian 1, is not available to testify because he is deceased, and anticipates that the defense may raise an objection to this.  Second, prior to the 2019 trial in this matter, the Government filed a motion *in limine*, ECF60, seeking a ruling that the defense be precluded from eliciting hearsay statements made by Civilian 1 to FBI Special Agents Vernon Addison or Arthur Durrant during the course of any interview, which the Court denied without prejudice, ECF64 at 3, ¶ 11, before ultimately ruling in the Government's favor at trial, Tr. 10/1/19, 1470-74, 1598-1601.  Despite this ruling, certain statements were, in fact, elicited.  In order to prevent a similarly prejudicial occurrence during the retrial, the Government renews its earlier motion here.

1

I. <u>The Fact of the Victim's Death is Admissible as it is Relevant and its Probative Value Outweighs Any Prejudicial Effect.</u>

The Government seeks to introduce Civilian 1's death certificate as Government Exhibit 709, a copy of which is attached as Attachment A,[1] so that the jury will not be inclined to speculate as to the reason why the Government has not presented the victim's testimony. It is relevant, and therefore admissible, in order to explain the absence at trial of this central figure. *See* Fed. R. Evi. 401, 402.

The death certificate is a certified copy bearing the raised Great Seal of the State of New Jersey issued on November 8, 2021 by the New Jersey Department of Health, Office of Vital Statistics and Registry, and signed by Vincent T. Arrisi, State Registrar, Office of Vital Statistics and Registry. Attachment A at 1-2. The death certificate is therefore a self-authenticating document under Fed. R. Evi. 902(1) (Domestic Public Documents That Are Sealed and Signed) and/or 902(4) (Certified Copies of Public Records). *See, e.g., United States v. Jones*, 2016 WL 10704381, at * 3 (E.D. La. Feb. 17, 2016) (birth certificate produced to defense counsel in redacted form, provided to the government by a governmental entity, and containing a seal of the department of State and a signature purporting to be an execution or attestation admissible as self-authenticating document under Fed. R. Evi. 902(1)); *United States v. Hall*, 2017 WL 6527150, at *4 (M.D. Pa. Dec. 21, 2017) (citing Fed. R. Evi. 902(4) for the proposition that "the court can accept certified copies of public records as self-authenticating").

The death certificate establishes that the victim died on January 23, 2021, from an accidental drug overdose. The Government has redacted such personal information as Civilian 1's date of birth, social security number, address, and the names and addresses of various relatives from page 1 of the certificate. The Government has also redacted, from the top of page 2 of the certificate, information indicating that the immediate cause of death was "fentanyl and para-fluorofentanyl intoxication" (redaction from addendum to line 36a. Part 1) caused when Civilian 1 "took drugs" (redaction from addendum to line 44, which the preceding page indicates is the box in which one is to "describe how the injury occurred"). The Government has left unredacted the box indicating the manner of death, listed as "Accident[.]" Attachment A at 2, line 46.

---

[1] Because the death certificate contains personal information about Civilian 1 and his family, the Government will supply a copy of Attachment A to chambers and to opposing counsel, via email, but will not file Attachment A on the docket. The Government will make available to the Court and opposing counsel the original, unredacted certificate bearing a raised seal upon request.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evi. 403. The probative value of the death certificate, as redacted, outweighs any possible undue prejudice. It should therefore be admitted to prove that the victim is recently deceased, from a cause bearing no relation to the events alleged in the Indictment, and thus cannot be called by either side to testify.

"Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative," and the balance "should be struck in favor of admissibility." *Spain v. Gallegos*, 26 F.3d 439, 453 (3d Cir. 1994). In determining the probative value of evidence under Rule 403, the court "must consider not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case." *United States v. Herman*, 589 F.2d 1191, 1198 (3d Cir. 1978). The absence of the victim—and the failure of the Government to explain that absence—was very much at issue in the 2019 trial, as the defense argued that this absence raised reasonable doubt as to the defendant's guilt.

During the 2019 trial, neither the Government nor the defense presented the victim's testimony, though the Government subpoenaed him, and he was equally available to both sides. Prior to deliberations, this Court instructed the jury as follows with respect to the victim's absence:

> [The victim] did not testify at this trial. Both the Government and the defendant have the same power to subpoena witnesses to testify on their behalf. If a witness is equally available or unavailable to both sides, you should not guess or speculate as to what the witness might have said. In short, you should disregard the witness' possible testimony as a fact in the case. Again, you must bear in mind, of course, that the law never imposes upon the defendant in a criminal case the burden of producing or calling any witnesses or producing any evidence.

Tr. 10/2/2019, 1697-98.

Nevertheless, in his closing, defense counsel made much of the victim's absence.

> Where is [Civilian 1]? I know Ms. Lorber is going to get up and say to you, look, the Judge gave you a jury instruction that said if a witness can be subpoenaed by either side, you don't weigh in on that. But you also got the jury instruction that says that the

3

> defense has no burden to produce any evidence. That burden is with them.
>
> So the fact that they didn't call [Civilian 1] should loom in your mind. Where is he? What's he say? Because we know what Roohr said he said. Roohr said it right there. He don't remember. And Guido – and Roohr doesn't want to become the next Evan Jones who you heard made some kind of allegation that was unfounded against Frank and ultimately he resigned. Roohr told you about [Civilian 1], but they didn't.

Tr. 10/2/2019, 1773-74.

The Government should be permitted to anticipate and counter this line of argument. Even were the defense to agree that, in light of the victim's death, it would not make such an argument during the retrial, the jury may still be left to wonder why the Government failed to call the victim to give his own account of the assault. The Government should be permitted to allay these natural concerns with irrefutable evidence that the prosecution is not hiding the victim from the jury, and that the victim's unavailability is not due to any negligence on the part of the Government, but due to the unfortunate circumstance of the victim's death.

II. The Court Should Exclude Inadmissible Hearsay Statements by the Victim to Special Agents Addison and Durrant.

An out of court statement introduced for the truth of the matter asserted is hearsay, and inadmissible under Federal Rules of Evidence 801(c) and 802. The FBI report detailing a December 2016 interview of Civilian 1 conducted by Special Agents Vernon Addison and Arthur Durrant contains the case agents' summary of information provided to them by Civilian 1 regarding the events surrounding his September 1, 2016 arrest. Any statements of Civilian 1 contained in this report that the defense seeks to introduce for their truth are not admissible through the case agents, as they are hearsay.

The December 2016 report indicates that Civilian 1 did not see who assaulted him. The report also indicates that, unlike eyewitnesses Sgt. (now Lt.) Nathan Roohr and Det. Sgt. (now retired) Salvatore Guido, Civilian 1 recalls that he was pushed into a door at the bottom of the stairs leading out of the hotel, rather than into a door at the top of the stairs. The report further indicates that Civilian 1 recalled being pushed into the front passenger door of a police car by a white male with no facial hair and a military style short haircut, an event that neither Roohr nor Guido recall, and which police dash cam video introduced at the 2019 trial as Government Exhibit 204 refutes.

During the 2019 trial, as anticipated in pretrial briefing, defense counsel indicated his intention to ask Special Agent Addison about statements that the victim had made to the FBI during the course of the December 2016 interview. The Government argued, as it had in its motions *in limine*, that the only plausible reason for such a line of inquiry would be to attempt to establish an alternative version of events to that provided by Roohr and Guido. In other words, the defendant would be seeking to introduce these statements for their truth. Defense counsel argued that he would not be introducing the statements for their truth, but rather to establish that Special Agent Addison had failed to follow up on information tending to suggest that someone other than the defendant could have assaulted the victim. Tr. 10/1/2019, 1470-72. The Court ruled that any specific statements made by the victim were inadmissible hearsay. Tr. 10/1/2019, 1472 (Defense counsel, "certainly can argue that the FBI didn't pursue certain leads. I mean, defense counsel in any criminal case can always argue that the investigating agency didn't pursue the leads. The question is whether or not the specific statements are admissible, and I don't think they are admissible under Rule 403. I think the prejudice greatly outweighs the relevance."). The Court did, however, rule that counsel could, "without getting into the substance," Tr. 10/1/2019 (defense counsel confirming his understanding of the limits of the court's ruling), and without indicating that the information came from the victim, ask Special Agent Addison whether he received information about the assault that was contradictory to that conveyed to him by witnessing officers Roohr and Guido. Tr. 10/1/2019, 1473-74.

During cross-examination, defense counsel asked Special Agent Addison:

Q. In the course of your investigation, did you learn from interviews of other people that were on the scene that descriptions of where [Civilian 1] was struck were materially different – and when I say where, I mean the physical location, not where on his body – where on the physical location [Civilian 1] was struck that were significantly different from where Roohr described this incident happened?

Tr. 10/1/2019, 1518. Counsel then continued in this vein for multiple pages of transcript. Ultimately, Special Agent Addison confirmed, in response to pointed questioning, that an unnamed interviewee had mentioned Civilian 1 being struck on the first floor of the hotel as well as while entering a police vehicle. *Id.* at 1519-20. Special Agent Addison further confirmed that the unidentified interviewee on the scene described the individual who slammed his head into a door as having a clean-shaven face, as opposed to Nucera's mustache, and a military haircut, as opposed to Nucera's slightly longer hairstyle. *Id.*

The elicitation of these details contravened the Court's prior ruling. Further prejudice to the Government arose, however, when during re-cross-

5

examination of Special Agent Addison, defense counsel questioned him as follows:

Q.   And included in those 40 to 50 witnesses [interviewed by the FBI] was [Civilian 1] that you interviewed, correct?

A.   That's correct.

Q.   Now the contradictory information that Ms. Lorber just asked you about [during redirect examination], that came from a person who was in a very good position –

MS. LORBER:  Objection.

Tr. 10/1/2019, 1599.

Thus, despite the Court's ruling, which the Court then reaffirmed following the Government's objection, Tr. 10/1/2019 at 1600, the defense was able to put before the jury the idea that the victim gave an account of the offense contradictory to that offered by officers Roohr and Guido, and more favorable to the defendant.

Then, in defense counsel's closing argument to the jury the following day, counsel highlighted the out-of-court statements contained in the FBI report of the victim's interview, which thanks to defense counsel's previous questioning, the jurors could not help but realize must have been made by the victim. For example, counsel argued:

> You only heard on cross-examination, and frankly, of the last witness that the Government called, I'm sorry to point, Agent Addison, that a person on the scene was interviewed by the FBI and said that [Civilian 1]'s body and head were pushed in the first floor door of the hotel, the exit door on the first floor and into the police cruiser doorjamb. You didn't hear that through every single witness the Government called and including Agent Addison, they were done with him, they were done their direct. That came out on cross. Why?

Tr. 10/2/2019, 1765

Counsel continued along these lines for multiple pages of the transcript. Tr. 10/2/2019, 1765-1772.  It was not just a passing comment, but a main theme of the defense closing, that an unidentified witness—whom the jury now knew quite well to be the victim—had told the FBI that the victim had been hit in the head in various physical locations where the defendant had not been present.  In other words, the defense was able to argue to the jury the truth of

6

the out of court statements, making clear that this was the defense's true intent in eliciting them, not just to fault the FBI for a supposedly slipshod investigation.

With the benefit of hindsight—and the transcript of counsel's closing—it is clear that all reference to the victim's statements to the FBI must be excluded from the trial testimony as inadmissible hearsay. "If the hearsay rule is to have any force, courts cannot accept without scrutiny an offering party's representation that an out-of-court statement is being introduced for a material non-hearsay purpose. Rather, courts have a responsibility to assess independently whether the ostensible non-hearsay purpose is valid." *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993) (holding that police officers' testimony concerning contents of police radio call stating that there was black male dressed in black with gun at particular location was hearsay, notwithstanding government's contention that testimony was offered for limited purpose of establishing background for officers' actions).

This situation is on all fours with *United States v. Lopez*, 340 F.3d 169 (3d Cir. 2003). There, during Lopez's trial on charges of possessing heroin in prison, the prosecution introduced the statements of two prison officials that they had "received information" that Lopez possessed heroin. *Id.* at 175. The prosecution had no direct evidence that Lopez possessed heroin. Rather, prison officials had discovered the heroin near his bunk, where many other inmates had unfettered access, and a drug screen later that day tested positive for morphine, a result consistent with, though not conclusive of, the use of heroin. *Id.* at 171. The district court ruled, over Lopez's hearsay objection, that the statements were admissible, as they were not admitted for their truth, but rather as context for the officials' actions. *Id.* at 174-75, 176. Yet in the prosecutor's closing argument to the jury, he specifically invoked these statements for their truth, to prove that Lopez had possessed the heroin. The prosecutor argued that the searching prison officials:

> testified they had information that Albert Lopez was in possession of heroin. It wasn't a random search. They weren't walking by and decided to go in. They had information that he had heroin in the cell. So what did they do? They . . . went to Albert Lopez's cell on June 7th to search it for heroin.

*Id.* at 175.

The Third Circuit ruled that the statements were inadmissible and prejudicial hearsay and ordered a new trial, noting that "the government's emphatic invocation of the officers' testimony during closing could only have served to strengthen the jury's perception that the officers' 'information that Albert Lopez was in possession of heroin' was itself a datum in the construction of the government's substantive case." *Id.* at 177.

Similarly, defense counsel's repeated refrain in his closing argument to the jury here that the government was hiding the statements of a witness (the victim) who supposedly saw someone *else* push the victim into a doorjamb in a location where the defendant was not present demonstrate that defense counsel's purpose in eliciting the statements was to have the jury believe them to be true. This is impermissible under Rule 801(c). Therefore, the Court should exclude these statements.

Conclusion

For all of the foregoing reasons, the Government seeks a ruling permitting the Government to introduce a redacted copy of the victim's death certificate at trial to explain his absence from the proceedings and avoid the possibility of improper speculation by the jury, and a ruling excluding the inadmissible hearsay statements of the victim.

    Sincerely yours,

    RACHAEL A. HONIG
    Acting United States Attorney

    By: MOLLY S. LORBER
    R. JOSEPH GRIBKO
    Assistant U.S. Attorneys

cc: Rocco C. Cipparone, Jr., Esq., (by ECF and e-mail)