LAW OFFICES
OF
# ROCCO C. CIPPARONE, JR.

| ROCCO C. CIPPARONE, JR.◻◇† | | |
|---|---|---|
| | ◻ | CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CRIMINAL TRIAL ATTORNEY |
| | ◇ | ADMITTED TO PRACTICE IN NJ, PA & FEDERAL COURTS IN NJ, PA & MICH. |
| | † | FELLOW, AMERICAN COLLEGE OF TRIAL LAWYERS |

January 7, 2022

Hon. Robert B. Kugler
U.S. District Court, DNJ
US Courthouse
1 John F. Gerry Plaza
Camden NJ 08101

filed ECF and by e-mail to Larry MacStravic, Deputy Clerk

RE:     USA v. Nucera, 17-532
          Request to extend voluntary surrender date

Dear Judge Kugler:

This letter is to request that the Court extend Mr. Nucera's self-surrender date from January 19, 2022 to a date no sooner than April 30, 2022.  Mr. Nucera is 64 years old and suffers from several health conditions, including lasting complications from a severe prior Covid illness.  He remains among the group of people that the Centers for Disease Control and Prevention ("CDC") has categorized as most at risk for contracting COVID-19 and its variants.  Mr. Nucera is particularly vulnerable because of his age and his medical conditions, and a jail environment only will exacerbate his vulnerability to severe illness or worse.

As the Court is aware from prior submissions (see 04-05-21 letter to Court), Mr. Nucera has a history of blood clots, bilateral leg deep vein thrombosis, and bilateral pulmonary emboli, which were

---

**PLEASE REPLY TO NJ OFFICE**

| 203-205 BLACK HORSE PIKE | | 806 REED STREET |
|---|---|---|
| HADDON HEIGHTS, NJ 08035 | | PHILA., PA 19147 |
| (856) 547-2100 | FAX: (856) 547-2225 | BY APPOINTMENT ONLY |

*WWW.CIPPARONELAW.COM*

diagnosed in February 2021 as complications from having contracted COVID-19. Mr. Nucera was hospitalized for approximately 9 days (the hospital discharge records were attached to that prior 04-05-21 letter) due to his severe COVID illness. Currently he is on medication to control his blood clots, which he must continue until the end of February 2022. The reason that the medication will be discontinued then is to allow a 15 day buffer before testing at the behest of his hematologist, which then will determine if Mr. Nucera remains at high risk for blood clots and will need to remain on that medication. Mr. Nucera has a scheduled follow up appointment on March 14, 2022, to decide if he needs to continue treatment or can stop the medication.

Additionally, Mr. Nucera advises that he has an appointment with his primary care physician on March 10, 2022, in order to undergo a complete physical, and an appointment with his cardiologist on March 21, 2022, to address remaining complications from his prior COVID-19 infection. As the Court may recall from a prior hearing and testimony by Dr. Gould, one of Mr. Nucera's doctors, Mr. Nucera continues to experience the "long-hauler" effects and symptoms of COVID.

His scheduled course of diagnosis and treatment should be permitted to play out as scheduled. The appointments referenced in this submission were established months ago. The request through the end of April 2022 is to allow adequate time for the tests and treatment that are scheduled, determination of the need for further treatments and interpretation of test results, needed medications, and to avoid the severe risks posed to Mr. Nucera by incarceration during the current wave of COVID infections. Given Mr. Nucera's ongoing need for treatment, his current continued complications from COVID-19 which resulted in a nine (9) day hospitalization, his heightened risk for COVID-and its variants, and the petri dish environment that correctional institutions provide regarding COVID infections, Mr. Nucera's

---

PLEASE REPLY TO NJ OFFICE

203-205 BLACK HORSE PIKE                                          806 REED STREET
HADDON HEIGHTS, NJ 08035                                          PHILA., PA 19147
(856) 547-2100                         FAX: (856) 547-2225        BY APPOINTMENT ONLY

WWW.CIPPARONELAW.COM

hematologist understandably recommends that Mr. Nucera not be incarcerated during the pandemic. (See **Exhibit A** attached - Letter from treating hematologist).

The current understaffing within the Bureau of Prisons, the lack of availability of testing kits, the inherently close-quarters nature of its detention facilities, the inability of the Bureau of Prisons to implement social distancing, and Mr. Nucera's current and past health conditions, warrant the self-surrender date to be postponed.   To do otherwise would put Mr. Nucera at significant exposure for serious illness or worse in the current situation.

### CHANGED CIRCUMSTANCES: RESURGENCE OF COVID OUTBREAK

On May 26, 2021, the Court sentenced Mr. Nucera to a 28 months imprisonment, and ordered him to self-surrender to the designated institution after a determination of the then still pending charges. Dkt. No. 181.  Mr. Nucera's then pending charges were resolved on December 20, 2021, when the Court signed an order dismissing counts one and two of the Indictment after a second jury hung regarding those counts. Dkt. No. 243.

Mr. Nucera has been designated to FCI- Ashland in Boyd County, Kentucky.  His surrender date is January 19, 2022.  Mr. Nucera is particularly vulnerable and has a past history of severe illness and hospitalization as a result of contracting COVID, and still is suffering complications from that prior illness.  He currently is undergoing treatment and monitoring for those complications (as discussed more fully *supra).*

On March 30, 2020, Chief Judge Freda L. Wolfson signed Standing Order 2020-06, declaring that, as a result of the spread of COVID-19, criminal proceedings could not be conducted in person without seriously jeopardizing public health and safety.  By that time, COVID-19 had infected over 201,000 people, and resulted in at least 8,204 deaths worldwide. The World Health Organization had

**PLEASE REPLY TO NJ OFFICE**

**203-205 BLACK HORSE PIKE**                                                                                    **806 REED STREET**
**HADDON HEIGHTS, NJ 08035**                                                                          **PHILA., PA 19147**
**(856) 547-2100**                              **FAX: (856) 547-2225**                    **BY APPOINTMENT ONLY**

*WWW.CIPPARONELAW.COM*

officially classified COVID-19 as a pandemic.  All criminal jury trials in the District of New Jersey were continued until March 2021.  Eventually, as the vaccine was produced, and the number of hospitalizations due to COVID-19 decreased, criminal jury trials, including the retrial of Mr. Nucera, resumed. However, after the completion of Mr. Nucera's second trial, the Omicron variant resulted in a surge of new COVID-19 cases across the nation.

Resultingly, on December 29, 2021 Chief Judge Wolfson issued standing order 2021–11, suspending all in person court appearances through January 31, 2022 as a protection for all persons involved in the court system in the District of New Jersey.   Of course, a crowded prison environment with the limitations and risks discussed *infra* is even a worse environment than the federal courthouse in terms of the ability to distance and limit exposures.  Mr. Nucera simply is asking the Court to recognize and relieve him from the enhanced risks that would be foisted upon him by the current surrender date.

The New Jersey Department of Health issued a statement that COVID-19 infections had increased by 246% during the week of December 27th.  To date, with the Omicron variant spreading rapidly, the country is averaging more than 500,000 new cases a day, far more than any previous point in the pandemic. Hospitalizations have increased more than 50% over the last two weeks. With many people testing themselves on at-home tests, and other infections going undetected, reported cases are considered an under-count of actual infections.[1]  The CDC also has issued guidance that individuals at a higher risk of contracting COVID-19 -- adults over 60 years old and people with chronic medical conditions – should take preventative actions including social distancing and engaging in additional hygiene practices.

---

[1] https://www.nytimes.com/interactive/2021/us/covid-cases.html

PLEASE REPLY TO NJ OFFICE

203-205 BLACK HORSE PIKE                                                806 REED STREET
HADDON HEIGHTS, NJ 08035                                                 PHILA., PA 19147
(856) 547-2100                        FAX: (856) 547-2225              BY APPOINTMENT ONLY

*WWW.CIPPARONELAW.COM*

## CONDITIONS OF CONFINEMENT AND THE SPREAD OF CORONAVIRUS

Conditions of confinement create the ideal environment for the transmission of contagious disease.  Inmates cycle in and out of BOP facilities from all over the country, and people who work in the facilities leave and return daily, without screening.  Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited.  Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19.  According to public health experts, incarcerated individuals "are at special risk of infection given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in the settings."[2]  As the former chief medical officer of Rikers Island jail explained, unlike free people, detainees cannot engage in "'social distancing' and 'self-quarantine' and 'flattening the curve' of the epidemic—all of these things are impossible in jails and prisons, or are made worse by the way jails and prisons are operated."[3]

---

[2] "Achieving a fair and effective COVID-19 response: an open letter to Vice President Mike Pence, and other federal state and local leaders from public health and legal experts in the United States," (March 7, 2020) https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf .

[3] Jennifer Gonnerman, *How Prisons and Jails can Respond to the Coronavirus*, The New Yorker, (March 14, 2020), https://www.newyorker.com/news/q-and-a/how-prisons-and-jails-can-respond-to-the-coronavirus ("it's going to be very, very difficult to deliver a standard of care either in the detection or the treatment of people who are behind bars. I just have really grave concerns").  *See also* Dr. Lipi Roy, *Infections And Incarceration: Why Jails And Prisons Need To Prepare For COVID-19 Now,* Forbes, (March 11, 2020), https://www.forbes.com/sites/lipiroy/2020/03/11/infections-and-incarceration-why-jails-and-prisons-need-toprepare-for-covid-19-stat/#1fa6b08e49f3  ("Hand sanitizers, for instance, are often considered contraband . . . Other harsh realities of jail life that prevent proper application of CDC recommendations include limited access to toilet paper and paper towels; and handcuffs prohibit the use of hands to cover one's mouth.").

---

**PLEASE REPLY TO NJ OFFICE**

203-205 BLACK HORSE PIKE                                                      806 REED STREET
HADDON HEIGHTS, NJ 08035                                                     PHILA., PA 19147
(856) 547-2100                         FAX: (856) 547-2225              BY APPOINTMENT ONLY

*WWW.CIPPARONELAW.COM*

On March 26, 2020, the U.S. Attorney General issued a memorandum instructing the Bureau of Prisons to prioritize home confinement as an appropriate response to the COVID-19 pandemic.  On May 27, 2021, the Senate Judiciary Committee approved the COVID-19 SAFER Detention Act, S. 312, by a vote of 14 – 8.  This Bill, while voted out of the Senate Judiciary committee but not yet law, would correct the compassionate release statute to make clear that individuals may seek relief from the courts 30 days after submitting a compassionate release request of the BOP, without the need for the exhaust remedies, and during a pandemic, temporarily shorten the 30 day waiting period to 10 days and provide that vulnerability to Covid-19 is considered to be "extraordinary and compelling."  Our law makers clearly recognize the danger to inmates.  Placing Mr. Nucera into that danger-zone unnecessarily contradicts that important message and consideration.

## Specific Conditions within the Bureau of Prisons

Over 150,000 individuals are incarcerated in federal prisons and jails, and thousands of incarcerated people and correctional staff move in and out of federal prisons every day.[4]  COVID-19 has been exploding in federal prisons, with more than 3,000 documented active cases among inmates and staff as of January 5, 2022, compared with around 500 active cases documented as of mid-December.[5]  All but four BOP facilities are currently operating with drastic modifications because of the pandemic, with many suspending visiting.  Even with moving inmates out of institutions, locking down institutions, canceling visitation, discontinuing programs and recreations, and instituting the wearing of masks, the

---

[4] https://www.bop.gov/about/statistics/population_statistics.jsp

[5] https://www.bop.gov/coronavirus/

PLEASE REPLY TO NJ OFFICE

203-205 BLACK HORSE PIKE                                                      806 REED STREET
HADDON HEIGHTS, NJ 08035                                                    PHILA., PA 19147
(856) 547-2100                         FAX: (856) 547-2225               BY APPOINTMENT ONLY

WWW.CIPPARONELAW.COM

BOP has still recorded over 275 federal inmate deaths and 7 BOP staff member deaths since the beginning of the pandemic. Even more -- tens of thousands of federal inmates – have been infected with COVID-19 and fortunately have recovered.[6]  Moreover, the BOP lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law-enforcement officers, and other care and service providers who enter the facility.[7]

In Kentucky, where Mr. Nucera's designated facility is located, COVID-19 infection rates have increased 275% in the past 14 days.  Kentucky has one of the lowest vaccination rates in the entire country, at only 54% of its population being fully vaccinated.[8]  Boyd County, Kentucky -- the county in which the facility to which Mr. Nucera has been designated is situated --  currently is classified by the Kentucky Public Health Department as a "Red Zone" county.  That designation means that the average daily cases within that population are ranked as particularly high.  All but two counties in Kentucky are classified as "Red Zones" facing high daily incident rates. The remaining two counties are not far behind, reaching "substantial" daily incidence rates.[9]  In Boyd county itself, only 47% of the population is fully vaccinated.[10] On January 6, 2022, Kentucky Governor Andy Beshear pleaded with his state's residents to get vaccinated and to wear masks, as the state recorded its third straight day of record-breaking case numbers.  Beshear raised concerns over the rapidly increasing hospital admissions stating, "there is real

---

[6] https://www.bop.gov/coronavirus/; https://www.forbes.com/sites/walterpavlo/2021/09/28/office-of-inspector-general-releases-survey-on-federal-prisons-reaction-to-covid-19/?sh=351b15857d9a

[7] https://abcnews.go.com/amp/Politics/wireStory/us-prisons-director-resigning-crises-filled-tenure-82104713

[8] https://www.nytimes.com/interactive/2021/us/covid-cases.html
[9] https://govstatus.egov.com/kycovid19

[10] https://www.nytimes.com/interactive/2021/us/covid-cases.html

PLEASE REPLY TO NJ OFFICE

203-205 BLACK HORSE PIKE                                             806 REED STREET
HADDON HEIGHTS, NJ 08035                                             PHILA., PA 19147
(856) 547-2100                    FAX: (856) 547-2225                BY APPOINTMENT ONLY

WWW.CIPPARONELAW.COM

8

cause for concern that hospitals can and maybe will be overrun again." [11]  In light of the fact that Mr. Nucera had to be hospitalized for nine (9) days when he contracted Covid previously, that potential hospital surge and the availability of resources in that regard in Kentucky is a real concern in his situation.

FCI Ashland – to which Mr. Nucera is designated -- is at level three COVID-19 operation.  Level three means that the institution has either (1) a medical isolation rate of greater than 7%, (2) a facility vaccination rate of less than 50%, or (3) a community transmission rate greater than 100 per 100,000 inmates over the last seven days.[12]  The recommendations for "Red Zone" counties in Kentucky include encouraging physical distance of at least 6 feet apart in public settings, maximizing the usage of outdoor space, considering limiting and postponing gatherings, and encouraging medically vulnerable persons to avoid others.[13]  Once within the prison population, Mr. Nucera would not be able to engage in any of the recommendations that Kentucky has recognized are necessary to preserve an individual's safety against COVID-19.

## CONCLUSION

The circumstances that existed when Mr. Nucera's self-surrender date was established have changed. The emergence of the Omicron variant, and resurgence of the COVID-19 pandemic, pose a direct risk that is far greater if Mr. Nucera enters BOP custody during this public health crisis.

A request for an extension of his voluntary surrender until April 30, 2022 is modest, precautionary, and well-warranted.  In addition to protecting Mr. Nucera from his heightened

---

[11] https://www.wcpo.com/news/coronavirus/kentucky-breaks-daily-covid-case-record-again-prepares-for-hospitalization-surge

[12] https://www.bop.gov/locations/institutions/ash/

[13] https://chfs.ky.gov/agencies/dph/covid19/RedCountyRecommendation.pdf

---

**PLEASE REPLY TO NJ OFFICE**

203-205 BLACK HORSE PIKE                                                806 REED STREET
HADDON HEIGHTS, NJ 08035                                                PHILA., PA 19147
(856) 547-2100                      FAX: (856) 547-2225                 BY APPOINTMENT ONLY

*WWW.CIPPARONELAW.COM*

vulnerability to COVID, this short extension will allow Mr. Nucera the ability to obtain needed medical care and updated recommendations his multiple treating physicians, and will allow him to finish the previously established medical assessments necessitated by his prior COVID illness.  Requiring Mr. Nucera to surrender and then to pursue the present compassionate release protocols of administrative remedy exhaustion followed by Court filings if administratively denied, would elevate form over substance.  In addition, the issue is ripe and within this Court's present discretion, before he is incarcerated.  Incarceration while he pursues compassionate release certainly would expose him to significant risk of illness or worse, and is avoidable.[14]

The Court has had the opportunity, in various court proceedings, to observe the faintness in Mr. Nucera's voice, labored breathing, hearing difficulties and fatigue that remain from his prior bout with Covid-19.  Indeed at a prior hearing (on 05-24-21) one of his physicians (Dr. Katrina Gould) testified that he suffers from the long-haul effects of Covid.

Mr. Nucera was released under pretrial supervision in November of 2017. For over four years he has attended all court appearances, including two full trials.  He has complied with all conditions of pretrial release, and is not a flight risk or a danger to the community. Because Mr. Nucera remains a good candidate for voluntary surrender, and because we are currently experiencing a global pandemic during

---

[14] Indeed, some incarcerated have had otherwise "modest" sentences turned into death sentences.  As an anecdotal example, the undersigned counsel was notified last year that while a former client's motion for compassionate release from federal incarceration due to potential Covid risks was pending in the U.S. District Court for the Eastern District of PA, that client contracted Covid and sadly died from complications related to such. He was in his mid-50s, and was about 21 months into a 63-month sentence, which turned into a death sentence. Clearly there are real risks in the heightened environment of jail.

**PLEASE REPLY TO NJ OFFICE**

| | | |
|---|---|---|
| **203-205 BLACK HORSE PIKE** | | **806 REED STREET** |
| **HADDON HEIGHTS, NJ 08035** | | **PHILA., PA 19147** |
| **(856) 547-2100** | **FAX: (856) 547-2225** | **BY APPOINTMENT ONLY** |

*WWW.CIPPARONELAW.COM*

which incarceration would endanger his health and potentially his life, the Court should continue Mr.

Nucera's self-surrender date.

Very Truly Yours,
LAW OFFICES OF ROCCO C. CIPPARONE, JR.

/S/ ROCCO C. CIPPARONE, JR.

BY: _____

Rocco C. Cipparone, Jr., Esquire

C:      AUSA Molly Lorber
        AUSA Joseph Gribko
        (Both by email and ECF)
        Frank Nucera Jr. (by email)

---

PLEASE REPLY TO NJ OFFICE

203-205 BLACK HORSE PIKE                                    806 REED STREET
HADDON HEIGHTS, NJ 08035                                    PHILA., PA 19147
(856) 547-2100              FAX: (856) 547-2225             BY APPOINTMENT ONLY

WWW.CIPPARONELAW.COM

# EXHIBIT A



## capitalhealth
## MEDICAL GROUP

Capital Health – Hematology Oncology Specialists

Two Capital Way, Suite 220, Pennington, NJ 08534

40 Fuld Street, Suite 404, Trenton, NJ 08638

1401 Whitehorse-Mercerville Road, Suite 215
Hamilton, NJ 08619

Tel:  609.303.0747
Fax: 609.303.0771

January 5, 2022

To Whom It May Concern,

This letter is for Mr. Frank Nucera (DOB 3/2/1957). Mr. Nucera has history of blood clots, bilateral leg deep vein thrombosis and bilateral pulmonary emboli diagnosed February 2021.  At that time he was also diagnosed of Covid pneumonia, suspect he has hypercoagulable state from Covid infection. Currently he is still on Eliquis for history of significant blood clot, and will need to continue till end of February 2022. Then he has follow up appointment March 14 2022, to decide if need to continue treatment or can stop Eliquis.

Please give him appropriate assistance for his medical condition. He does have hypercoagulable condition, has increased risk for recurrent clot especially with COVID infection. He is advised to avoid institution stay with COVID pandemic.

Please do not hesitate calling me if any questions.

Sincerely,

Emily Chen, MD